UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

UNITED STATES OF AMERICA					CASE NO.:	1:11-CR-20346

v.

ROMIR GUSTAVO GUTIERREZ GUERRERO

### SENTENCING MEMORANDUM

COMES NOW THE DEFENDANT, ROMIR GUSTAVO GUTIERREZ GUERRERO (hereinafter also referred to as "Gutierrez" or "Defendant"), by and through Undersigned Counsel, and files this Sentencing Memorandum. The Defendant Gutierrez hereby prays that this Honorable Court will consider the following facts in establishing a reasonable sentence for him.

A four - count Indictment, and later a Superseding Indictment, naming Gutierrez and 21 other defendants was filed in the Southern District of Florida. PSI - 6, ¶¶ 1, 2; PSI - Preface. Count One charges that the defendants conspired with each other to manufacture and distribute 5 kilograms or more of cocaine, knowing the cocaine would be imported into the United States, in violation of Title 21, U.S.C. § 963. PSI - 6, ¶ 1.

On October 12, 2012, the Defendant pled guilty to Count One with a written plea agreement. R. 328; R. 348; PSI - 6, ¶ 1. According to the Presentence Investigation (PSI) Report, Gutierrez's Base Offense Level is 38. PSI - 17 - ¶ 72. With a two level enhancement because a dangerous weapon was allegedly involved, the offense level was increased by 2 levels pursuant

to U.S.S.G. § 2D1.1(b)(1). PSI - 17 - ¶ 73. The offense level was also increased by 3 levels pursuant to U.S.S.G. § 3B1.1(b) because Gutierrez allegedly was a manager or supervisor (but not an organizer) and the criminal activity involved five or more participants or was otherwise extensive. PSI - 18 - ¶ 75.  With a 2 level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a), and a 1 level reduction for timely notification of intent to plead guilty pursuant to U.S.S.G. § 3E1.1, his total offense level is 40. PSI - 18, ¶¶ 79 - 81. Gutierrez's criminal history category is 1 and his sentencing guidelines range is 292 to 365 months. PSI - 18, 22 - ¶¶ 84, 109. Gutierrez has objected to the weapons enhancement, the aggravated role enhancement, and that he should receive a safety valve adjustment. R. 388; PSI - 17 - 18 - ¶¶ 73, 75. He has argued that with these adjustments his total offense level should thus be 33. R. 388. The parties have jointly agreed to recommend a safety valve adjustment if Gutierrez meets the safety valve criteria pursuant to U.S.S.G. § 5C1.2.  PSI - 6, ¶ 5. In addition, the Defendant objects to not receiving a minor role adjustment.

In the conspiracy, the organization operated multiple laboratory sites where cocaine was manufactured, and maintained stash sites where cocaine was stored pending distribution. PSI - 7, ¶ 14. Three laboratory sites, two stash sites, and about 3,000 kilograms of cocaine were seized. PSI - 7, ¶ 14. Gutierrez had no role in any of these labs or stash sites.  In addition, three operational submersible vessels, as well as a partially framed submersible vessel under construction, were seized. PSI - 7, ¶ 14.

According to the PSI Report, Gutierrez managed the construction site for the first submersible that was seized in San Lorenzo, Ecuador on July 2, 2010. PSI - 7-8, 10, 14 - ¶¶ 15, 31, 53. Gutierrez has objected that he was not, in fact, a manager or supervisor. R. 388. Law

enforcement also seized weapons, radios, and other items, though no drugs were at the site. PSI - 7-8, ¶ 15.

After the first submersible was seized, the drug organization lost faith in Gutierrez and he was not brought to Colombia to build the next submersible. PSI - 10, ¶ 31. Gutierrez was the only member of the conspiracy in which the drug organization lost faith. *See Generally* PSI - 7 - 17 - ¶¶ 11, 68.

## MEMORANDUM OF LAW

### I. THE DISTRICT COURT SHOULD SUSTAIN THE DEFENDANT'S MINOR ROLE OBJECTION

The Defendant is entitled to a minor role adjustment due to his role in relation to others in the conspiracy. The Sentencing Guidelines state that a defendant's offense level should be decreased if the defendant has a minor role in the offense. *U.S.S.G. § 3B1.2*. The Sentencing Guidelines specifically direct courts to make individual determinations in each case. *Id*. The District Court's determination of whether to grant minor role adjustments are made on a case - by - case basis after a factual inquiry. *United States v. Ryan,* 289 F.3d 1339, 1348 - 9 (11th Cir. 2002), *quoting United States v. Rodriguez DeVaron*, 175 F.3d 930, 941 (11th Cir. 1999).

In order to determine if a defendant qualifies for a minor role adjustment, the District Court must assess the defendant's role against relevant conduct for which he has been held accountable. *United States v. Rodriguez DeVaron*, 175 F.3d at 941. In order to make its assessment, the District Court must first evaluate whether the defendant's role was minor in relation to relevant conduct attributed to him in calculating his base offense level and, if so, it may then consider the defendant's relative culpability vis-a-vis that of any other participants.

*United States v. Ryan*, 289 F.3d at 1348 - 9.

Probation has not recommended that Gutierrez receive a minor role adjustment when sentenced. PSI - 18, ¶ 75. According to the PSI Report, the Defendant was a manager or supervisor (but not an organizer) and the criminal activity involved five or more participants or was otherwise extensive. PSI - 18 - ¶ 75. Nevertheless, Gutierrez objects to not receiving a minor role adjustment and provides a detailed description of the role of others who did not receive any role enhancement and whose duties were more important than his.

Pursuant to *Ryan*, the sentencing Court may then compare Gutierrez's role to that of the other defendants to determine whether he qualifies for a minor role. *United States v. Ryan*, 289 F.3d at 1348 - 9. In this case, since Gutierrez's role was minor in relation to other defendants in the conspiracy, he should receive a minor role adjustment.

Specifically, although the PSI Report states that he was a manager, Gutierrez contests this. R. 388. Instead, according to the PSI Report, co - defendant Mauner Mahecha Marcelo (hereinafter also referred to as "Marcelo") was the most culpable member of the conspiracy and clearly the boss, however he only received the three level enhancement which is also being applied to Gutierrez. PSI - 13, ¶ 49. Marcelo provided the financing for the submersibles and had a significant ownership interest in all of the cocaine seized. PSI - 13, ¶ 49. He directed the activities of other conspiracy members, either directly, or through supervisors or managers whose activities he directed. PSI - 13, ¶ 49. He is responsible for the three operational submersibles seized in this case which were capable of transporting 18,000 kilograms of cocaine. He was also responsible for the laboratories seized which were capable of manufacturing thousands of kilograms of cocaine per week and which had 3,036 kilograms of cocaine actually seized. PSI -

13, ¶ 49. However, despite this extensive leadership role, Marcelo only received a 3 level increase pursuant to U.S.S.G. § 3B1.1(b) based on his role as a manager or supervisor.

In contrast, Gutierrez was only involved with one submarine, the organization lost faith in him, and he had no role in any of the numerous labs or stash houses. The Defendant's role was indeed minor when compared to Marcelo's role as a manager or supervisor.

Furthermore, co - defendant Agustin Campos Pardo (hereinafter also referred to as "Pardo") misused his skills as a former member of the Colombian Navy to work as the captain of the submersible seized on February 13, 2011. That submersible was capable of transporting 5,000 kilograms of cocaine, and he worked as the navigator of the submersible seized on July 2, 2010, which was capable of transporting 10,000 kilograms of cocaine. PSI - 16, ¶ 66. Yet despite these leadership roles, which were greater than Gutierrez's role, no aggravating role enhancement was recommended for Pardo in the PSI Report, and Pardo received a sentence of 80 months imprisonment. R. 375. Since Gutierrez's role was minor in comparison to Pardo's, Gutierrez should receive a shorter sentence than Pardo did.

Likewise, co - defendant Juan Carlos Vasquez Pachon (hereinafter also referred to as "Pachon") also had a greater role than Gutierrez did. PSI - 15, ¶ 60. Pachon, who oversaw work done at the construction sites, had leadership roles which Gutierrez lacked. PSI - 15, ¶ 60. Pachon owned a fiber - carbon business in Colombia, and he provided materials and aided in the installation of fiber - carbon on at least one of the submersibles. This material was installed so that the submarines would be difficult to detect. PSI - 15, ¶ 60.

Yet despite these actions, no aggravating role enhancement was recommended for Pachon in the PSI Report, and Pachon received a sentence of 75 months imprisonment. R. 384. Since

Gutierrez's role was minor in comparison to Pachon's, Gutierrez should likewise receive a shorter sentence than Pachon did.

Alexander Maecha is Muner's nephew and partner and he was the second in charge of the organization. He clearly has more of a role of command than Romir.

Octavio Amezquita was in charge of buying equipment and engines, and he also was in charge of the engineers building the submarines and would threaten the engineers to do good work or they would suffer the consequences. He had a position of leadership.

Jairo Trejos was in charge of the Colombia and Ecuador project, and he was to keep Mauren appraised of the advances the project was making. He was sentenced to 80 months.

Alexander Hernandez Arrubia was responsible for guarding the drugs and was a well-trusted member of the organization. He also received a sentence of 80 months. Clearly weapons were very likely to have been associated with his role.

Jack Jimenez was the financial director of the project. He paid for the equipment. He also was in charge of the logistical movements of equipment and supplies.

Victor Palacio was in charge of the electrical installations for the Ecuadorian submarine.

Juan Carlos Vasquez was responsible for importing all the electrical equipment for the Ecuadorian submarine and responsible for putting in the carbon fiber. He received a 75 month sentence.

Oscar Gutierrez, a retired colonel, was in charge of monitoring the safety of the construction site in Ecuador. He also recruited crew members and was in charge of communications during the trips

The Defendant's role was minor. Pursuant to U.S.S.G. § 3B1.2(a), this Court should thus

sustain Gutierrez's minor role objection. For all of the aforementioned reasons, Gutierrez's minor role objection should be sustained.

## II. GUTIERREZ SHOULD NOT RECEIVE AN AGGRAVATING ROLE ENHANCEMENT PURSUANT TO USSG § 3B1.1 BECAUSE HE DID NOT HAVE A LEADERSHIP ROLE

Pursuant to USSG § 3B1.1,

> ...(a)[i]f the defendant was an organizer or leader of criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.(b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.(c) If the defendant was an organizer, leader, manager or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

USSG § 3B1.1.

The government bears the burden of establishing by a preponderance of the evidence the facts necessary to support a sentencing enhancement. *United States v. Askew*, 193 F. 3d 1181, 1183 (11th Cir. 1999); See *United States v. Lawrence*, 47 F.3d 1559, 1566 (11th Cir. 1995); *United States v. Shriver*, 967 F.2d 572, 575 (11th Cir. 1992). It is the district court's duty to ensure that the government carries this burden by establishing a sufficient and reliable basis for its request for an enhancement. *Id.*

> The preponderance of the evidence standard...does not relieve the sentencing court of the duty to exercise the critical fact-finding function that has always been inherent in the sentencing process...[the standard signifies] a recognition of the fact that if the probation officer and the prosecutor believe that the circumstances of the offense, the defendant's role in the offense, or other pertinent aggravating circumstances, merit a lengthier sentence, they must be prepared to establish that pertinent information by evidence adequate to satisfy the judicial skepticism aroused by the lengthier sentence that the proffered information would require the district court to impose. *United States v. Lawrence*, 47 F. 3d at 1566-67 (quoting *United States v. Wise*, 976 F.2d 393, 402-03 (8th Cir. 1992)). Preponderance of the

>evidence is not a high standard of proof. It is not, however, a toothless standard either, and a district court may not abdicate its responsibility to ensure that the prosecution meets this standard before adding months or years onto a defendant's prison sentence." internal citations omitted.

*United States v. Askew*, 193 F.3d 1181, 1183 (11th Cir. 1999).

In Gutierrez's case, the probation officer has recommended a 3 level aggravating role enhancement pursuant to U.S.S.G. § 3B1.1(b) because Gutierrez allegedly was a manager or supervisor (but not an organizer) and the criminal activity involved five or more participants or was otherwise extensive. PSI - 18, ¶ 75. The Defendant objects to the 3 level upward adjustment. R. 388; PSI - 18, ¶ 75.

Gutierrez contests that he was a manager in the conspiracy. R. 388. Gutierrez's lack of a leadership role is evidenced by the fact that he was the only member of the conspiracy in which the drug organization lost faith. The roles of the others are discussed above.

In addition, Marcelo Mahecha, was described by probation as the was the most culpable member of the conspiracy. PSI - 13, ¶ 49. Marcelo Mahecha provided the financing for the submersibles and had a significant ownership interest in all of the cocaine seized. PSI - 13, ¶ 49. He directed the activities of other conspiracy members, either directly, or through supervisors or managers whose activities he directed. PSI - 13, ¶ 49. He is responsible for the three operational submersibles seized in this case which were capable of transporting 18,000 kilograms of cocaine, the laboratories seized capable of manufacturing thousands of kilograms of cocaine per week and the 3,036 kilograms of cocaine actually seized. PSI - 13, ¶ 49. However, despite this extensive leadership role, Marcelo only received a 3 level increase pursuant to U.S.S.G. § 3B1.1(b) based on his role as a manager or supervisor.

8

In contrast, Gutierrez was only involved with one submarine, the organization lost faith in him, and he had no role in any of the numerous labs or stash houses. Gutierrez's lack of a leadership role is evidenced by the fact that he was the only member of the conspiracy in which the drug organization lost faith. The Defendant's role was indeed minor when compared to Marcelo's role as a manager or supervisor. Gutierrez thus should not receive an aggravating role enhancement pursuant to USSG § 3B1.1, because the Defendant did not have a leadership role.

### III. GUTIERREZ SHOULD NOT RECEIVE A WEAPONS ENHANCEMENT

Pursuant to USSG 2D1.1(b)(1), if a dangerous weapon (including a firearm) was possessed, the offense level is increased by two levels. USSG 2D1.1(b)(1). In Gutierrez's case, the PSI also adds 2 points to the base offense level calculation pursuant to USSG 2D1.1(b)(1) since, according to the PSI Report, Gutierrez managed the construction site for the first submersible that was seized in San Lorenzo, Ecuador on July 2, 2010 and law enforcement also seized weapons, radios, and other items, though no drugs were at the site. PSI - 7-8, 10, 14, 17 ¶¶ 15, 31, 53, 73.

...§ 2D1.1(b)(1) requires the government to show by a preponderance of the evidence that the firearm was present at the site of the charged conduct. Once this showing is made the evidentiary burden shifts to the defendant to show that a connection between the firearm and the offense is clearly improbable. *internal citations omitted.*

*United States v. Cooper*, 111 F.3d 845, 847 (C.A.11 (Ala.),1997).

In Gutierrez's case, the weapons were found in a location where there were no drugs. Although the site was used in the drug conspiracy, there arguably is not a sufficient time and space connection between the weapons and Gutierrez to enhance Gutierrez for those weapons.

Gutierrez also did not have possession of the weapons. It should also be noted that it appears that this Court has not, in its prior sentencing adjudications in this case, invoked the "co-conspirator" rule, wherein the presence of weapons on any one conspirator means all conspirators in a given nexus are held accountable for the weapons. In the absence of such a ruling, there is insufficient evidence in the PSI to support the conclusion that the Defendant constructively possessed a firearm, and therefore, the Defendant should not receive the 2 point enhancement.

## CONCLUSION

This Court should sustain Gutierrez's minor role, aggravating role, and weapons enhancement objections. Gutierrez should also receive a safety valve adjustment.

DATED THIS 14th day of December, 2012.

Respectfully submitted,
s/Darlene Calzon Barror
DARLENE CALZON BARROR, ESQUIRE
506 N. Armenia Ave.
Tampa, Florida  33609
Tel:(813) 877-6970
Fax: (813) 879-2610
DCBARROR@aol.com
Attorney for Defendant
Florida Bar No.  0860379

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished electronically by CM/ECF system which will send an electronic filing to THE OFFICE OF THE ASSISTANT UNITED STATES ATTORNEY, this 14th day of December, 2012.

*s/Darlene Calzon Barror*
DARLENE CALZON BARROR, ESQUIRE